UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COEUS CREATIVE GROUP, LLC,

               Plaintiff,                    Case No. 23-cv-10012

v.                                      Paul D. Borman
                                      United States District Judge

CAROL RENAUD GAFFNEY, PHD,

               Defendant.

_____/

## OPINION AND ORDER
## (1) GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (ECF NO. 14), AND
## (2) DENYING DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF (ECF NO. 16)

Plaintiff Coeus Creative Group, LLC brings this action against Defendant Carol Renaud Gaffney, Ph.D., seeking a declaration that Plaintiff's use of the term "Behavioral Intelligence" does not infringe on a trademark owned or controlled by Defendant. Plaintiff pleads that the term "Behavioral Intelligence" is a generic, descriptive term that is widely used, but that Defendant has threatened Plaintiff with cease-and-desist letters alleging ownership of the term and trademark infringement.

Now before the Court are (1) Defendant Carol Renaud Gaffney, Ph.D.'s Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and

1

Improper Venue (ECF No. 14), and (2) Defendant's Motion for Sanctions Against Plaintiff (ECF No. 16). Both motions have been fully briefed. The Court has carefully considered the parties' submissions and does not believe that oral argument will aid in its disposition of these matters; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons discussed below, the Court GRANTS Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and DENIES Defendant's Motion for Sanctions against Plaintiff.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background

Plaintiff Coeus Creative Group, LLC is a limited liability corporation organized and existing under the laws of the State of Michigan, with its office and place of business in Livonia, Michigan. (ECF No. 1, Compl., ¶ 6.) Plaintiff provides business-focused consulting and training services, and since as early as 2016, Plaintiff has trained individuals how to harness the power of "Behavioral Intelligence" to improve productivity, performance, and relationships. (*Id.* ¶¶ 9-10.)

Defendant Carol Renaud Gaffney, Ph.D., is a Florida resident and the owner of former defendant Integrated Behavioral Intelligence Solutions, LLC, a limited liability corporation organized and existing under the laws of the State of Florida.

2

(*Id.* ¶ 7.) (ECF No. 14-2, Declaration of Carol Renaud Gaffney, Ph.D. (Gaffney Decl.) ¶¶ 2, 4.)[1] Defendant "'is a consulting psychologist, executive and peak performance coach, developer of Behavioral Intelligence®, Behavioral Intelligence at Work®, the STARR Advantage® and inventor o[f] the STARR Process™," and she provides clients with business consulting and training services under the Behavioral Intelligence mark. (ECF No. 1, Compl. ¶ 22.)

On or about October 10, 2022, counsel for Defendant sent a cease-and-desist letter to Plaintiff's Michigan office demanding that Plaintiff terminate its use of Defendant's "Behavioral Intelligence" Mark in providing competing services. (*Id.* ¶ 22, citing Ex. B, 10/10/22 Letter, at ECF No. 1-4, PageID.29-31.)

When Plaintiff continued to use Defendant's Mark on its Website, LinkedIn account, Facebook, and YouTube pages, Defendant's counsel sent a second, follow-up letter on November 2, 2022, again demanding Plaintiff cease its infringing use of Defendant's Mark. (*Id.* ¶¶ 23-24, citing Ex. B, 11/2/22 Letter, at ECF No. 1-4, PageID.32-34.) Defendant's counsel and Plaintiff's counsel thereafter contacted each other by phone and email in November and December 2022 regarding

---

[1] Plaintiff originally named Integrated Behavioral Intelligence Solutions, LLC as a co-defendant in this action, but voluntarily dismissed its claims against that entity without prejudice on February 13, 2023, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (ECF No. 11.)

Plaintiff's continued use of the Behavioral Intelligence trademark. (*Id.* ¶¶ 26-27, citing Exs. M & N, Emails, at ECF No. 1-4, PageID.817-24.)

Then, on January 4, 2023, Plaintiff responded by filing this action against Defendants Dr. Gaffney and her company, Integrated Behavioral Intelligence Solutions, LLC, in this Court, asserting one count seeking a declaration of non-infringement. (ECF No. 1, Compl.) Plaintiff asserts that this Court has personal jurisdiction over both Defendants based on "sending Plaintiff with [sic] two (2) Cease and Desist letters (Exhibit B)," and "by advertising and selling its goods and services to customers, at least over the internet, within this state." (*Id.* ¶ 4.)

Defendant asserts that, upon receipt of the Complaint in this case, Defendants determined that there was no reasonable basis for personal jurisdiction over them here. Defendant asserts her counsel promptly sent a letter to Plaintiff and formally asked Plaintiff and its counsel to provide a factual and legal basis for personal jurisdiction over Defendants in this forum. (ECF No. 16-2, 2/3/2013 Letter to B. Lesperance, PageID.1367-39.). The letter explained that a reasonable inquiry should have revealed that Plaintiff has no basis to sue Defendants in the Eastern District of Michigan, and Defendants' counsel warned that if Plaintiff did not "immediately disclose the factual and legal basis for personal jurisdiction in the Eastern District of Michigan or dismiss its Complaint," Defendants "will defend this litigation and—in

4

doing so—will demonstrate the baseless nature of [Plaintiff's] jurisdiction claim to the Court and seek all appropriate relief under Rule 11." (*Id.*)

Plaintiff then dismissed Defendant Integrated Behavioral Intelligence Solutions, LLC (Defendant Dr. Gaffney's company) as a named defendant on February 13, 2023. (ECF No. 11, Pl.'s Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i), PageID.1012-13.) Plaintiff, however, did not dismiss its claims against Dr. Gaffney, individually. (*See id*.)

Defendant states that, because the jurisdictional allegations are the same for both parties, her counsel renewed its request for dismissal, explaining that the Complaint makes no substantive distinction between Dr. Gaffney, individually, and the LLC with respect to the jurisdictional allegations. (ECF No. 16-3, 2/14/2023 email, PageID.1372-73.) Defendant again cautioned that "[i]f [Plaintiff] declines to do so, we reserve our right to seek all available relief under Rule 11." (*Id.*) Defendant states that Plaintiff's counsel rebuffed that request and refused to engage in further discussions. (ECF No. 16-3, 2/20/2023 Email, PageID.1372).

## B.    Defendant Gaffney's Motions

Defendant filed her Motion to Dismiss the Complaint on March 9, 2023, and then served her Rule 11 Motion for Sanctions on Plaintiff on March 15, 2023, 21 days before filing it, as required by Fed. R. Civ. P. 11. (ECF No. 16-5, 3/15/2023

Letter with Motion, PageID.1411-75.) Plaintiff did not respond regarding the Rule 11 letter or withdraw its Complaint.

> **1.** **Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(2) and(3) (ECF No. 14)**

Defendant filed a Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Improper Venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3). (ECF No. 14, Def.'s Mot.) Defendant asserts that her only contacts with Michigan related to this trademark dispute consist of two cease-and-desist letters sent by her counsel to Plaintiff, and she argues that such letters do not establish the contacts necessary for personal jurisdiction under Sixth Circuit precedent. Defendant further argues that venue is not appropriate in this Court under 28 U.S.C. § 1391 because none of the events giving rise to Defendant's enforcement efforts occurred in Michigan, aside from Plaintiff's receipt of the two cease-and-desist letters.

Plaintiff filed a Response in opposition to Defendant's motion to dismiss. (ECF No. 15, Pl.'s Resp.) Plaintiff argues that Defendant is subject to this Court's personal jurisdiction, and venue is appropriate here, claiming that, in addition to the two cease-and-desist letters, Defendant provided services to a Michigan limited liability company in 2022, Defendant considers Plaintiff to be a "direct competitor," and Defendant maintains an interactive website.

Defendant filed a Reply brief in support of its motion to dismiss. (ECF No. 17, Def.'s Reply.) Defendant contends that it is not subject to this Court's personal jurisdiction based on two isolated contacts occurring a decade apart and wholly unrelated to this lawsuit – a business meeting in Michigan over 10 years ago and sending an invoice to a Delaware limited liability company that maintains an office in Troy, Michigan. Defendant further argues that its generally-accessible website, which does not target Michigan, and the two cease-and-desist letters, have no bearing on personal jurisdiction in this case.

### 2.     Defendant's Motion for Sanctions (ECF No. 16)

Defendant also filed a Motion for Sanctions against Plaintiff pursuant to Fed. R. Civ. P. 11 and the Court's inherent authority. (ECF No. 16, Def.'s Mot.) Defendant argues that Plaintiff filed this lawsuit without conducting a reasonable pre-filing investigation to determine whether it had an objectively reasonable basis in law and fact for bringing the suit, and that when Defendant's counsel brought this to Plaintiff's attention, Plaintiff dismissed Dr. Gaffney's company, but not Dr. Gaffney, even though the jurisdictional allegations were the same for both parties. Defendant seeks sanctions in the form of reasonable attorney fees.

Plaintiff filed a Response in opposition to Defendant's motion for sanctions. (ECF No. 18, Pl.'s Resp.) Plaintiff asserts that its Complaint is well-founded in

existing law or a good faith argument for changing the law, and that Plaintiff conducted a reasonable pre-suit investigation. Plaintiff argues that sanctions therefore are not warranted.

Defendant filed a Reply brief in support of its motion for sanctions. (ECF No. 19, Def.'s Reply.) Defendant argues that Plaintiff ignores in its Response brief that it cannot pursue a claim in this forum, and Defendant contends that Plaintiff's Response only further highlights Plaintiff's failure to conduct a reasonable pre-suit investigation.

## II.  LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a complaint for lack of personal jurisdiction over a party. The party asserting the existence of personal jurisdiction bears the burden of making at least a prima facie showing of its existence. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). "Without personal jurisdiction over an individual ... a court lacks all jurisdiction to adjudicate that party's right, whether or not the court has valid subject matter jurisdiction." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).

8

The Court has three options when faced with a motion to dismiss for lack of personal jurisdiction. The court may: (1) decide the motion on affidavits alone; (2) permit discovery to help rule on the motion; or (3) conduct an evidentiary hearing to decide any remaining factual questions. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). Although the plaintiff always bears the burden of establishing that jurisdiction exists, the method selected by the court to resolve the issue will affect the weight of that burden. *Id.*

When the Court relies on written submissions and affidavits rather than holding an evidentiary hearing to resolve a Rule 12(b)(2) motion, the burden on plaintiff is "relatively slight" and the court must view the evidence in the light most favorable to the plaintiff. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). "[P]laintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen*, 935 F.2d at 1458. A plaintiff can meet this burden by "establishing with reasonable particularity sufficient contracts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Sav. Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

9

Importantly, when a court resolves the issue as to whether it has personal jurisdiction based on written submissions alone, the plaintiff "may not rest on [its] pleadings to answer the movant's affidavits, but must set forth, 'by affidavit and otherwise[,] … specific facts showing that the court has jurisdiction.'" *Serras*, 875 F.2d at 1214 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff … alleges collectively fail to state a *prima facie* case for jurisdiction." *CompuServe*, 89 F.3d at 1262. If an evidentiary hearing is held, the plaintiff must demonstrate that jurisdiction is proper by a preponderance of the evidence. *Theunissen,* 935 F.2d at 1465.

While a motion to dismiss would normally be converted to a motion for summary judgment by asking the court to consider additional documents, a Rule 12(b)(2) motion "mirrors in some respects the procedural treatment given to a motion for summary judgment." *Id.* at 1459. As the Sixth Circuit Court of Appeals has explained:

> Motions to dismiss under Rule 12(b)(2) involve burden shifting. The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (internal

quotation marks and citations omitted). Unlike a motion for summary judgment,

though, a court may not "weigh the controverting assertion[;]" rather, if facts

proffered by the defendant conflict with those offered by the plaintiff, a district court

does not consider them. *Theunissen,* 935 F.2d at 1459; *Aristech Chem. Int'l Ltd. v.*

*Acrylic Fabricators Ltd.,* 138 F.3d 624, 626 (6th Cir. 1998).

**B. Fed. R. Civ. P. 12(b)(3)**

Federal Rule of Civil Procedure 12(b)(3) provides for dismissal of a complaint

for improper venue. In examining a plaintiff's arguments, the court must determine

whether the case falls within one of the three categories set out in 28 U.S.C. §

1391(b): (1) a judicial district in which any defendant resides, if all defendants are

residents of the State in which the district is located; (2) a judicial district in which

a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated; or (3) if there

is no district in which an action may otherwise be brought as provided in this section,

any judicial district in which any defendant is subject to the court's personal

jurisdiction with respect to such action. *Atlantic Marine Const. Co. v. U.S. Dist.*

*Court for W. Dist. of Tex.*, 571 U.S. 49, 55-56 (citing § 1391(b)(1)-(3)). If a plaintiff

establishes at least one of these three categories, venue is proper. Where a plaintiff does not, "venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.*

Plaintiff "bears the burden of proving that venue is proper." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002). In determining whether Plaintiff has met its burden of establishing proper venue, the Court "must draw all reasonable inferences and resolve all factual conflicts in favor of" Plaintiff. *Id.* If the Court determines that venue is improper, it "has the discretion to decide whether the action should be dismissed or transferred to an appropriate court." *Kline v. Gemini Transport, LLC*, No. 16-13157, 2016 WL 7210695, at *1 (E.D. Mich. Dec. 13, 2016) (citing 28 U.S.C. § 1406(a)); *see also First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998) (explaining that the choice between dismissing or transferring an action filed in the improper venue lies within the discretion of the court).

### III. ANALYSIS

#### A. Personal Jurisdiction

The Court begins with the threshold issue of personal jurisdiction. *See Friedman*, 929 F.2d at 1156 (stating that without personal jurisdiction over a defendant the court lacks jurisdiction to proceed on the merits of the case even if the

12

court has subject matter jurisdiction). Personal jurisdiction can be either specific or general. *Air Products & Controls*, 503 F.3d at 549-50. "General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the **defendant**. Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) (internal and end citations omitted).

Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute, and if the exercise of personal jurisdiction would not deny the defendant due process. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). In this case, Plaintiff asks the Court to declare the rights of the parties under the federal Lanham Act, 15 U.S.C. § 1114, and jurisdiction of the Court is founded on 15 U.S.C. § 1121, so this two-part standard governs the Court's jurisdictional inquiry here. *See id.*

The Michigan Supreme Court has explained that "[a] personal jurisdiction analysis is a two-fold inquiry: (1) do the defendant's acts fall within the applicable long-arm statute, and (2) does the exercise of jurisdiction over the defendant comport

13

with due process?" *Green v. Wilson*, 455 Mich. 342, 347 (1997) (citing *Starbrite Distrib. v. Excelda Mfg. Co.*, 454 Mich. 302 (1997)). "[I]f a defendant's actions or status fit within a provision of a long-arm statute; jurisdiction may be extended as far as due process permits. The long-arm statute is coextensive with due process insofar as the statute is limited by due process, and, therefore, the statute and due process share the same outer boundary." *Id.* at 350 (noting that situations may arise where the long-arm statute permits greater jurisdiction than does the constitution).

Then, to comply with constitutional due process, "out-of-state defendants" must "have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 905 (6th Cir. 2021) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This "minimum contacts" analysis is somewhat different for general jurisdiction versus specific jurisdiction determinations. Federal due process mandates that "[g]eneral jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird*, 289 F.3d at 873 (quoting *Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). As to specific jurisdiction, the Sixth Circuit Court of Appeals has adopted a

three-part test for determining whether the exercise of specific personal jurisdiction

over an out-of-state defendant comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)

(footnote omitted).

### B. Whether the Court May Exercise General Personal Jurisdiction Over Defendant

Defendant argues that she is not subject to general personal jurisdiction in

Michigan. As stated above, personal jurisdiction over a defendant exists if the

defendant is amenable to service of process under the forum state's long-arm statute,

and if the exercise of personal jurisdiction would not deny the defendant due process.

*Bird*, 289 F.3d at 871.

Michigan's long-arm statute governing "General Personal Jurisdiction Over

Individuals," provides for general personal jurisdiction over an individual if "any of

the following relationships" exists: (1) presence in the state at the time when process

is served; (2) domicile in the state at the time when process is served; or (3) consent.

Mich. Comp. Laws § 600.701. In this case, Defendant has presented undisputed

15

evidence that she is domiciled in Naples, Florida, not Michigan, she does not own real property in Michigan, and she had not consented to personal jurisdiction here. (ECF No. 14-2, Gaffney Decl. ¶¶ 2-3, PageID.1044.) Accordingly, the Court finds that Plaintiff has failed to meet its burden to make at least a prima facie showing that Defendant's contacts with Michigan satisfy any of the three conditions in the applicable Michigan long-arm statute.[2]

Turning to whether Defendant has contacts with the State of Michigan sufficient to comport with general jurisdiction under federal due process, as stated above, "[g]eneral jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird*, 289 F.3d at 873 (citation omitted). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582

---

[2] Plaintiff also argues that this Court can exercise general personal jurisdiction over Defendant pursuant to Mich. Comp. Laws § 600.731(3), which governs a court's general personal jurisdiction over an unincorporated entity such as a partnership or association. This statute clearly does not apply in this case as Plaintiff expressly brings this suit against Dr. Gaffney in her individual capacity, not as a "partnership association or unincorporated voluntary association."

16

U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

Again, Defendant has presented undisputed evidence that she is domiciled in Naples, Florida, not Michigan, she does not own real property in Michigan, and she had not consented to personal jurisdiction here. (ECF No. 14-2, Gaffney Decl. ¶¶ 2-3, PageID.1044.) Plaintiff asserts that Defendant is nevertheless subject to this Court's general personal jurisdiction because she "visited Michigan over a decade ago – for business purposes – and has since relied on an active website to transact in interstate commerce, including here in Michigan." (ECF No. 15, Pl.'s Resp. at PageID.1084-85.) Plaintiff also contends that Defendant has alleged Plaintiff is a direct competitor and that she has, "as recently as December 2022, performed services for a Michigan-based business." (*Id.*)

The Court finds that Plaintiff fails to assert "with reasonable particularity sufficient contacts between [Defendant] and [the State of Michigan]" to make a prima facie case that Defendant has continuous and systematic contacts with the State of Michigan sufficient to subject Defendant to this Court's general personal jurisdiction. *See Neogen Corp.*, 282 F.3d at 887 (internal quotation marks and citation omitted). First, Plaintiff fails to offer any evidence that Defendant's website specifically targets Michigan in any way, and only alleges that it is "sufficiently

17

interactive" to allow consumers to "view" or "order" her services. (ECF No. 15, Pl.'s Resp. at PageID.1079.) The Sixth Circuit Court of Appeals has held that the operation of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction," even where the website enables the defendant to do business with residents of the forum state, because such activity does not "approximate[] physical presence within the state's borders." *Bird*, 289 F.3d at 874 ("The ability of viewers to register domain names on the website does not alter our conclusion, because the website, in this respect, simply enables [Defendant] to do business with Ohio residents, a fact that does not permit general jurisdiction."); *see also Neogen Corp.*, 282 F.3d at 890 ("A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.") (citation omitted).

Second, two isolated, unrelated contacts with the State of Michigan, ten years apart, cannot satisfy the general jurisdiction requirements of "continuous and systematic" contacts with the State. Defendant stated that her only contact with the State of Michigan was her attendance at a single meeting with a manager of a former client a decade ago in Detroit, Michigan, but that she has "never provided services to clients in the State of Michigan" and "do[es] not engage in any business activities

18

in Michigan." She further averred that she does not directly solicit clients in Michigan and has never directed any advertisements for her business to Michigan residents. (ECF No. 14-2, Gaffney Decl. ¶¶ 5-6, PageID.1045.)

In response, Plaintiff points only to an invoice dated November 25, 2022, from Defendant and sent to Raytheon Professional Services LLC in Troy, Michigan for the "July 22 – December 16, 2022 (October 21, 2022)" time period, as evidence of one other contact with Michigan. (ECF No. 1-4, Invoice, PageID.953.) However, as Defendant correctly explains in her Reply brief, that single invoice fails to provide any support for asserting general jurisdiction over Defendant in Michigan. Rather, Defendant avers that the invoice refers to work she performed under a 2021 engagement to provide services to Raytheon Technologies Corporation, a Delaware corporation headquartered in Virginia, and its affiliates. (ECF No. 17-2, Gaffney Supp. Decl. ¶¶ 2-5, PageID.1489-90.) Defendant explains that Raytheon Professional Services LLC (RPS) is a successor to Raytheon Technologies Corporation, and that, contrary to Plaintiff's unsupported assertion in her Response, RPS is not a Michigan entity, but rather it is a Delaware limited liability company with its principal place of business in Texas. (*Id.*) (ECF No. 17-3, PageID.1492-94.) More importantly, Defendant points out that the invoice plainly states on its face that Defendant provided services on October 23, 2021, "on-site" in "East Hartford," a

19

city in Connecticut, not Michigan. (ECF No. 1-4, Invoice, PageID.953.) (ECF No. 17-2, Gaffney Supp. Decl. ¶ 4, PageID.1490.)

The Court finds that these two unrelated and isolated contacts, and especially the invoice for the work Defendant provided to a third party in Connecticut, do not demonstrate Defendant's "business transactions in Michigan [] for over a decade," as Plaintiff claims, and do not satisfy the due process requirements for the assertion of general personal jurisdiction over Defendant. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (explaining that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").[3]

Accordingly, the Court finds that Plaintiff's assertion of general personal jurisdiction over Defendant fails to satisfy the Michigan long-arm statute for personal jurisdiction over an individual, and also fails to comport with Defendant's federal due process rights.

---

[3] Plaintiff's argument that jurisdiction is proper over Defendant because Defendant "admitted" she is a "direct competitor" with Plaintiff is a non-starter, as Plaintiff has failed to present any evidence that Defendant offers her services *in Michigan*, and thus that they compete *in Michigan*.

**C. Whether the Court May Exercise Specific Jurisdiction Over Defendant**

Defendant also argues that she is not subject to specific personal jurisdiction in Michigan. In deciding this issue, as discussed above, the Court must first determine whether specific jurisdiction over Defendant exists under the Michigan long-arm statute. That statute, Mich. Comp. Laws § 600.705, Limited Personal Jurisdiction Over Individuals, provides:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative *arising out of an act which creates any of the following relationships*:
>
> (1) The transaction of any business within the state.

Mich. Comp. Laws § 600.705(1) (emphasis added). Additional relationships are set forth in the long arm statute, but Plaintiff does not argue they are relevant here. (*See* ECF No. 15, Pl.'s Resp. at PageID.1086 (citing only Mich. Comp. Laws § 600.705(1) as a basis for limited personal jurisdiction over Defendant).) The Michigan long-arm statute allows courts to exercise personal jurisdiction over an individual defendant *only when plaintiff shows that their cause of action arose out of the enumerated relationship* – here, the transaction of business within the state.

21

*See MB Fin. Bank, N.A. v. Struthers*, No. 16-11052, 2016 WL 1732735, at *2 (E.D. Mich. May 2, 2016); *see also Sullivan v. LG Chem, Ltd.*, --- F.4th ---, No. 22-1203, 2023 WL 5286965, at *9 (6th Cir. Aug. 17, 2023) (discussing the similar Mich. Comp. Laws § 600.715 (Michigan's long arm statute governing specific personal jurisdiction over corporations) and stating that "the long-arm statute 'exposes a non resident to suit in Michigan *only for* a cause which arose out of the relationship serving as the basis for such jurisdiction.'") (citation omitted, emphasis in original)).

The Court finds that Plaintiff fails to meet its burden to demonstrate that its cause of action in this case – seeking a declaration of no trademark infringement by Plaintiff – arose out of any "transaction of business within the state" by Defendant. Even assuming that Plaintiff could show that Defendant engaged in an act that could constitute the "transaction of business" in Michigan under Mich. Comp. Laws § 600.705 when it (1) met with the manager of a former client 10 years ago, and/or (2) when it sent an invoice to an entity with a Michigan address, for work performed in another state for a non-Michigan entity, there is nothing to show that Plaintiff's declaratory judgment claim here arose out of those two unrelated, isolated contacts. Plaintiff has offered nothing to show that those two contacts relate in any way to Defendant's enforcement activities at issue in this case. *See Bridgeport Music, Inc. v. TufAmerica, Inc.*, No. 18-10141, 2019 WL 3310866, at *9 (E.D. Mich. Feb. 2,

2019) (explaining that only those contacts "related to Defendants' enforcement of their interests in the works at issue or their defense of the validity of those interest" are relevant to the jurisdictional analysis, and other in-state activities are irrelevant); *800537 Ontario Inc. v. Auto Enterprises, Inc.*, 113 F. Supp. 2d 1116, 1124-25 (E.D. Mich. 2000) (finding that the contacts alleged by Plaintiffs as constituting "the transaction of any business within the state" did not give rise to the cause of action, and thus finding that the long-arm statute did not capture Defendants).

As for Defendant's website, Plaintiff offers nothing to show that Defendant offered any products that can be purchased directly from the site or that Defendant otherwise transacted business with Michigan residents through this generally accessible website. Plaintiff therefore fails to establish that specific personal jurisdiction exists over Defendant in this case under the relevant Michigan longarm statute.

Further, even if Plaintiff could establish limited personal jurisdiction over Defendant under the Michigan long-arm statute (which it cannot), the Court finds that Plaintiff fails to meet its burden to demonstrate that the exercise of specific personal jurisdiction over Defendant comports with Defendant's federal due process rights.

As discussed above, the Sixth Circuit Court of Appeals uses a three-prong test to assess whether sufficient minimum contacts exist to establish specific personal jurisdiction over a defendant: (1) whether the defendant purposefully availed herself of the privilege of acting in the forum state; (2) whether the cause of action arises from the defendant's activities in the forum state; and (3) whether the acts or consequences have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Neogen Corp.*, 282 F.3d at 889-90 (citing *Southern Machine*, 401 F.2d at 381). Here, Plaintiff asks the Court to exercise personal jurisdiction over Defendant based on the two contacts with Michigan discussed above, which occurred a decade apart, two cease-and-desist letters Defendant sent to Plaintiff, and Defendant's maintenance of a website. (ECF No. 15, Pl.'s Resp., PageID.1088.) Taking Plaintiff's allegations as true, the Court finds that Plaintiff has failed to sufficiently allege sufficient minimum contacts by Defendant with the State of Michigan to establish personal jurisdiction.

First, while the operation of a website can constitute the purposeful availment of the privilege of acting in a forum state "if the website is interactive to a degree that reveals specifically intended interaction with residents of that state," *Neogen Corp.*, 282 F.3d at 890, Defendant avers that she "do[es] not directly solicit any clients in Michigan and ha[s] never directed any advertisements for [her] business

24

to Michigan residents." (ECF No. 14-2, Gaffney Decl., ¶ 6, PageID.1045.) Plaintiff
has failed to offer any evidence to the contrary, or that Defendant's website
otherwise specifically targets Michigan residents. Plaintiff therefore fails to establish
that Defendant's generally-accessible website demonstrates purposeful availment of
the privilege of acting in Michigan in any manner. *Compare Daimler AG v.
Shuanghuan Auto. Co.*, No. 2:11-cv-13588, 2013 WL 2250213, at *4-5 (E.D. Mich.
May 22, 2013) (defendant's website which contains "photographs, descriptions and
videos of Infringing Cars that are the subject of this suit" and allows potential
customers to locate information regarding the cars, fill out an online credit
application, and click links to social media sites, is not sufficiently interactive to
constitute the transaction of business within the State); *Butler v. Sturgess*, No 05-
74353, 2005 WL 8178505, at *2 (E.D. Mich. Nov. 23, 2005) (defendant's passive
website does not constitute purposeful availment because it only provides
information and does not allow the user to make purchases directly from the site, but
instead provides a link to another site for purchases); *Sunshine Dist., Inc. v. Sports
Auth. Michigan, Inc.*, 157 F. Supp. 2d 779, 786 (E.D. Mich. 2001) ("being able to e-
mail Defendant and submit warranty claims … do[es] not constitute the transaction
of business within Michigan; nor do such contacts support a conclusion that
Defendant reached out to Michigan in a way that suggests an intention to establish

25

continuing relationships and obligations.") (quotation marks and end citation omitted); *Impulsaria, LLC v. United Dist. Grp., LLC,* No. 1: 11–CV–120, 2012 WL 4341058, at \*3 (W.D. Mich. Sept. 20, 2012) ("The district courts in this Circuit have routinely held that the mere maintenance of an interactive, commercial website, accessible from anywhere, without more, cannot constitute purposeful availment."); *with Bird*, 289 F.3d at 874-75 (finding that "by maintaining a website on which Ohio residents can register domain names and by allegedly accepting the business of 4,666 Ohio residents, the Doster defendants have satisfied the purposeful availment requirement"); *Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp.2d 806, 813 (E.D. Mich. 2000) (finding that defendant's website directly sold products to Michigan residents, and solicited and targeted Michigan residents by offering sports memorabilia with the logos of Michigan athletic teams, and thus subjected defendant to personal jurisdiction).

Second, the Court finds that a single meeting with the manager of a former client a decade ago, and a single invoice sent to a client's affiliate for processing, for services provided by Defendant to a third party in Connecticut, not Michigan, do not establish purposeful availment of Michigan as a forum, and that Plaintiff has also failed to show that those contacts are related in any way to its cause of action here arising from Defendant's enforcement activities. *See Bridgeport Music*, 2019 WL

26

3310866, at *9 (explaining that only those contacts "related to Defendants' enforcement of their interests in the works at issue or their defense of the validity of those interest" are relevant to the jurisdictional analysis, and other in-state activities are irrelevant); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (stating that due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State); *Walden*, 571 U.S. at 285 (looking to the defendant's contacts with the forum itself, not contacts with persons who reside there, and stating that "plaintiff cannot be the only link between the defendant and the forum").

Importantly, courts have distinguished between the analysis called for in determining specific jurisdiction in a declaratory judgment action as opposed to in a direct suit for infringement:

> In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit. Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. In such litigation, the claim both arises out of and relates to the defendant's alleged manufacturing, using, or selling of the claimed invention. But in the context of an action for declaratory

27

judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the wrongful restraint by the patentee on the free exploitation of non-infringing goods [through such means as] the threat of an infringement suit. Thus, the nature of the claim in a declaratory judgment action is to clear the air of infringement charges. Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, *but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. **The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities***.

*Bridgeport Music*, 2019 WL 3310866, at *6 (emphases added) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1332-33 (Fed. Cir. 2008) (internal quotation marks, citations, alterations, and footnote omitted)); *see also id.* at *7 (explaining that the Federal Circuit's reasoning in *Advocent Huntsville* concerning non-infringement and validity of patents "is equally applicable to suits seeking a declaration of non-infringement of other intellectual property rights such as copyrights or trademarks.") (collecting cases).

Therefore, "a defendant's 'commercialization activity' or sales of 'products [or services] covered by its own patents [or trademarks] in the forum state' do not support the exercise of specific jurisdiction in an action seeking a declaratory judgment of non-infringement[.]" *Id.* at *7 (quoting *Avocent Huntsville*, 552 F.3d at

28

1335); *see also J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 302 (N.D. Ohio 2021) ("[D]eclaratory judgment claims do not arise from infringement or unfair competition activities, but from the activity of the defendant enforcing its alleged intellectual property rights."). Neither of the two contacts in Michigan discussed above arises out of or relates in any way to the activities of Defendant in enforcing the trademark at issue.

Plaintiff also relies on the two cease-and-desist letters Defendant sent to Plaintiff to establish specific jurisdiction over Defendant. (ECF No. 15, Pl.'s Resp. at PageID.1087.) Although the cease-and-desist letters are related to Defendant's enforcement activities, courts have repeatedly held that "a cease-and-desist letter, standing alone, is not sufficient to support the exercise of personal jurisdiction over the party who sent that letter." *Bridgeport Music*, 2019 WL 3310866, at *8 (collecting cases); *see also Gerrit's Brand, Inc. v. Sun Valley Raisins, Inc.*, No. 21-cv-10280, 2022 WL 532940, at *3 (E.D. Mich. Feb. 22, 2022) ("[Nineteen] cease and desist letters [sent to plaintiffs and their customers], standing alone, do not give rise to personal jurisdiction."); *Hormel Food Corp.*, 526 F. Supp. 3d at 305-06 (cease and desist letters to plaintiff were insufficient to establish personal jurisdiction over defendant as to plaintiff's declaratory judgment claims, even though defendant had two distribution centers and a sales office in Ohio, because those contacts are not

relevant enforcement activities); *J.M. Smucker Co. v. Promotion in Motion*, 420 F. Supp. 3d 646, 658 (N.D. Ohio 2019) (holding that two cease-and-desist letters and an email informing plaintiff of infringement were insufficient to establish personal jurisdiction, and that defendant's sales, marketing, and promotion of its products in the forum state did not matter because those activities were not related to the enforcement of the trademark); *Precision Extraction Corp. v. Udoxi Sci., LLC*, No. 16-cv-11972, 2016 WL 7158884, at *3 (E.D. Mich. Dec. 8, 2016) (cease and desist letter alone not enough to create personal jurisdiction, even though the letter falsely sought to enforce patent rights the defendant did not possess); ); *Ann Arbor T-Shirt Co. v. Lifeguard Licensing Corp.*, No. 15-CV-13647, 2016 WL 1323784, at *5 (E.D. Mich. Apr. 5, 2016) ("Even if the Court were to assume that [defendant's cease and desist letter sent by Lifeguard's counsel to plaintiff alleging trademark infringement] satisfied the first and second criteria of the [*Southern Machines'*] test, courts have uniformly held that such letters, alone, are insufficient 'to make the exercise of jurisdiction over the defendant reasonable.'") (collecting cases); *Power Sys., Inc. v. Hygenic Corp.*, No. 3:13-382, 2014 WL 2865811, at *6-8 (E.D. Tenn. June 24, 2014) (finding that even if Hygenic's sales activities in Tennessee may serve as evidence of purposeful availment, defendant's only relevant contact with Tennessee concerning enforcement activities were those directed at plaintiff and, in the absence

30

of other judicial or extrajudicial enforcement activities directed by defendant at the forum state, finding personal jurisdiction based on a cease and desist letter alone is inconsistent with the principles of fairness underlying personal jurisdiction); *Indus Trade & Tech., LLC v. Stone Mart Corp.*, No. 2:11-cv-637, 2011 WL 6256937, at *4-7 (S.D. Ohio Dec. 14, 2011) (cease and desist letters satisfy neither the purposeful availment nor arising under prongs of *Southern Machine*) (collecting cases).

Courts reason that "the exercise of personal jurisdiction must rest upon other activities directed at the forum and relating to enforcement besides the letters threatening an infringement suit," "such as judicial or extra-judicial enforcement activities within the forum, entering into an exclusive license agreement, or another undertaking imposing enforcement obligations on a party residing or regularly doing business in the forum," because "[t]he owner of intellectual property rights 'should not subject itself to personal jurisdiction in a forum solely by informing a party of who happens to be located there of suspected infringement.'" *Hormel Foods Corp.*, 526 F. Supp. 3d at 303, 305 ("'Grounding personal jurisdiction on such contacts alone would not comport with the principles of fairness,'" and finding that defendant's physical presence in the State (two distribution centers and sales activity) is insufficient because it is not related to defendant's enforcement activity) (quoting *Red Wing Shoe, Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-

31

61 (Fed. Cir. 1998)); *Avocent Huntsville*, 552 F.3d at 1333 ("'[F]or the exercise of

personal jurisdiction to comport with fair play and substantial justice, there must be

'other activities' directed at the forum and *related to the cause of action* besides the

letters threatening an infringement suit.'") (citation omitted; emphasis in original).

 In this case, Defendant did not engage in any trademark enforcement activities

in Michigan aside from sending two cease-and-desist letters informing Plaintiff of

infringement. Plaintiff has failed to show that Defendant purposefully availed herself

of this forum, that this declaratory judgment action arose from Defendant's alleged

activities here, or that the exercise of jurisdiction over Defendant here would be

reasonable. The only connection between Defendant's efforts to enforce her claimed

trademark rights and the forum state of Michigan is the two cease-and-desist letters,

and the case law holds that such letters alone do not provide a basis for the exercise

of personal jurisdiction over the party who sent the letter. The Court therefore finds

that Plaintiff has failed to make the requisite prima facie showing as to any of the

three elements of the *Southern Machine* standard for exercising specific personal

jurisdiction over Defendant.

 Accordingly, the Court will grant Defendant's motion to dismiss for lack of

personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Because the Court grants Defendant's motion to dismiss for lack of personal jurisdiction, it will deny as moot Defendant's alternative request to dismiss for improper venue. The Court notes that neither party seeks to transfer this matter to another court or suggests a different proper venue.

### D. Defendant's Motion for Sanctions

Defendant also filed a Motion for Sanctions against Plaintiff pursuant to Fed. R. Civ. P. 11 and the Court's inherent authority. (ECF No. 16, Def.'s Mot.) Defendant argues that the factual allegations in Plaintiff's complaint "are not only conclusory, but clearly wrong," and that Plaintiff unreasonably continued to press its claims even after receiving Defendant's motion to dismiss and being afforded the 21-day safe harbor under Rule 11. Defendant states that an award of reasonable attorney fees and costs is an appropriate sanction here because Plaintiff's position that Defendant is subject to this Court's personal jurisdiction was never tenable.

Plaintiff responds that sanctions are not warranted because its Complaint was well-founded after having made a reasonable inquiry into the facts, including Defendant's counsel's assertions in the cease and desist letters that Plaintiff was infringing on Defendant's claimed trademark.

Defendant relies on two sources for the Court's authority to sanction Plaintiff's litigation conduct – Rule 11 and the Court's inherent authority. Under Rule 11 of the Federal Rules of Civil Procedure, the court has discretion to award sanctions (1) when a party presents pleadings, motions, or papers to the court for an improper purpose, (2) if the claims, defenses, or other legal contentions therein are not warranted by existing law or a nonfrivolous extension of the law, or (3) if the allegations and other factual contentions therein do not have evidentiary support. Fed. R. Civ. P. 11(b)(1)-(3). If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Rule 11 sanctions may be awarded only if [the party's] conduct in the litigation was objectively unreasonable ... or if [the party] did not have a reasonable basis for making her claim." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014) (citations omitted). Further, courts should "avoid using the wisdom of hindsight and should test [counsel's] conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citing *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987)).

34

In addition to Rule 11 penalties, "a district court may award sanctions pursuant to its inherent powers when bad faith occurs." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). The Sixth Circuit Court of Appeals employs a three-prong test to determine whether a district court may impose sanctions under this bad faith exception: "[1]the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)). District courts have broad discretion in determining whether to grant sanctions pursuant to Rule 11 or their inherent authority. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 273 (6th Cir. 2010) ("A federal court's inherent powers include broad discretion to craft proper sanctions."); *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992) ("[I]n deciding the nature and extent of sanctions to impose, the district court is given wide discretion.").

The Court has considered the parties' arguments and determines that, while this Court finds that it does not have personal jurisdiction over Defendant, it does so only after the above lengthy analysis. The Court, in the exercise of its broad discretion, does not conclude that Plaintiff's arguments are so baseless as to warrant

the imposition of sanctions in this case, or that Plaintiff pursued this case in bad faith or with an improper purpose. Defendant's Motion for Sanctions is DENIED.

## IV.    CONCLUSION

For all the reasons set forth above, the Court finds that it does not have personal jurisdiction over Defendant Carol Renaud-Gaffney in this case and therefore GRANTS Defendant Gaffney's Motion to Dismiss for lack of personal jurisdiction (ECF No. 14).

The Court DENIES AS MOOT Defendant's request to dismiss for improper venue.

Finally, the Court DENIES Defendant's Motion for Sanctions (ECF No. 16).

This is a final order that closes the case.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: September 1, 2023

36